UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| PAMELA ASHLEY, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6:20-CV-106-CHB |
| ) | |
| v. ) | **MEMORANDUM OPINION AND** |
| ) | **ORDER** |
| WAL-MART STORES EAST, LP, et al., ) | |
| ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on four motions. First, Defendant Jason Higgins filed a Motion to Dismiss Plaintiff Pamela Ashley's claims against him due to fraudulent joinder [R. 5]. Plaintiff Ashley filed a Response to that Motion [R. 6], and Defendant Higgins filed a Reply [R. 10]. Second, Plaintiff filed a Motion to Remand the case back to state court for lack of subject-matter jurisdiction [R. 7]. Defendants Higgins and Wal-Mart Stores East (Wal-Mart) filed a Response [R. 14], and Plaintiff filed a Reply [R. 23]. Third, Plaintiff filed a Motion for Permissive Joinder and Leave to Amend Complaint (Motion to Amend) to add additional Wal-Mart employees as defendants [R. 8].[1] Defendants filed a Response [R. 15], and Plaintiff filed a Reply [R. 17]. Finally, Plaintiff filed a Motion for Attorney Fees [R. 9]. Defendants filed a Response [R. 16], and Plaintiff filed a Reply [R. 24]. For the reasons explained below, the Court will grant Plaintiff's Motion to Remand, deny Plaintiff's Motion for Attorney's Fees, and defer all other motions to the state court.

---

[1] Though the Motion to Amend contained a proposed amended Complaint [R. 8-2], Plaintiff averred that she had not submitted an amended complaint and later filed a proposed Amended Complaint. [R. 12] She then filed a proposed Second Amended Complaint to correct a typo. [R. 13]

## I.  BACKGROUND

Plaintiff Pamela Ashley has alleged that on July 7, 2019, she was walking in the Hazard, Kentucky Wal-Mart when she slipped on some liquid[2] in an aisle, fell, and sustained severe injuries. [R. 1-3, pp. 2–7 (Complaint) at ¶¶ 6–8] On February 10, 2020, she sued Wal-Mart, as the owner of the store, and Higgins, as the store manager, for negligence, in Perry Circuit Court. [*Id.*, ¶¶ 10–19] She also included as defendants unknown employees and contractors of the Hazard Wal-Mart in charge of maintaining the premises. [*Id.*, ¶¶ 20–24]

Defendants answered the Complaint on February 21, 2020 [R. 1-3, pp. 20–27 (Answer)], and later submitted an affidavit from Defendant Higgins stating he did not work the day of the alleged accident. [R. 5-3 (Affidavit), ¶ 2] On May 14, 2020, Defendants removed the case to this Court. [R. 1] Defendants invoked the Court's diversity jurisdiction because there is diversity of citizenship between Plaintiff (citizen of Kentucky) and Wal-Mart (citizen of Delaware and Arkansas), and the amount in controversy is over $75,000. [*Id.*, ¶¶ 2–4; *see also* 28 U.S.C. § 1332] Defendants admitted that Higgins is also a citizen of Kentucky but alleged that he was fraudulently joined, so his presence would not destroy diversity. [R. 1, ¶ 5]

Defendant Higgins filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) and 12(c) on May 22, 2020, alleging fraudulent joinder because there is no claim "that is plausible on its face" against him, especially in light of *Grubb v. Smith*, 523 S.W.3d 409 (Ky. 2017), which he argues limited negligence/premises liability for store employees. [R. 5, pp. 4–7] Plaintiff responded [R. 6], and Higgins replied. [R. 10] On June 12, 2020, Plaintiff filed a Motion to Remand, arguing

---

[2] The substance Plaintiff slipped on is unclear. The complaint claims it was "an unsafe liquid negligently poured in the floor," [Complaint, ¶ 8] the incident report from July 7 notes that Plaintiff "claimed she slipped on a Blue Berry [sic]," [R. 5-1, p. 2], and the Plaintiff's answer to Defendant Wal-Mart's Interrogatories claims she "slipped on a liquid substance in the floor which she believes was water and some type of berries poured out into the aisle floor." [R. 5-2, p. 3]

2

the Court lacks diversity jurisdiction because Plaintiff and Higgins are both Kentucky citizens, and Higgins was not fraudulently joined. [R. 7] Defendants responded [R. 14], and Plaintiff replied. [R. 23]

## II.  Motion to Remand

This Court will first consider Plaintiff's Motion to Remand because, if the Court lacks diversity jurisdiction, it lacks jurisdiction to decide the other motions (except for the Motion for Attorney Fees). 28 U.S.C. § 1447(c); *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 531 (6th Cir. 1999); *see also Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549–50 (6th Cir. 2006). To invoke the Court's diversity jurisdiction, the removing party must demonstrate complete diversity at the time of removal—that is, all plaintiffs must be diverse from all defendants, and the amount in controversy must exceed $75,000. 28 U.S.C. §§ 1332(a), 1441(a); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996); *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999). All doubts concerning the propriety of removal must be resolved in favor of remand. *Eastman,* 438 F.3d at 549–50; *Coyne*, 183 F.3d at 493.

Here, it is undisputed that Plaintiff and Defendant Higgins are both citizens of Kentucky. [R. 1-3, ¶¶ 1–3; R. 1, ¶¶ 3, 5] According to Defendants, this is no obstacle to the Court's exercise of jurisdiction because they argue that Higgins was fraudulently joined. [R. 14, p. 3] "When a non-diverse party destroys complete diversity, 'the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined.'" *Clark v. Lowe's Home Ctrs., LLC*, No. 6:19-CV-114-REW, 2019 WL 5092941, at *1 (E.D. Ky. Oct. 11, 2019) (quoting *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999)). A party alleging fraudulent joinder "must demonstrate that there is no 'colorable' cause of action" against the defendant. *Pinion v. Wal-Mart Stores E., LP*, No. CV 15-25-ART, 2015 WL 12989971, at *1

3

(E.D. Ky. May 12, 2015) (quoting *Coyne*, 183 F.3d at 493). Wal-Mart bears a "heavy burden" in demonstrating fraudulent joinder. *Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.*, 512 F. App'x 485, 489–90 (6th Cir. 2013); *see also Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 597 (E.D. Ky. 2011). Here, Higgins's joinder is fraudulent only if it is "clear that there can be no recovery [against Higgins] under the law of the state on the cause alleged or on the facts in view of the law." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (quoting *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176 (5th Cir. 1968)). If Plaintiff has "even a 'glimmer of hope' then any charge of fraudulent joinder fails, and the Court must remand the case to state court for want of subject-matter jurisdiction." *Christensen v. ATS, Inc.*, 24 F. Supp. 3d 610, 613 (E.D. Ky. 2014) (quoting *Murriel–Don Coal Co.*, 790 F. Supp. 2d at 597); *see also Clark*, 2019 WL 5092941, at *1.

The fraudulent joinder test is more lenient than the standard for a 12(b)(6) motion to dismiss, *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012), and necessitates resolving "all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non-removing party," *Coyne*, 183 F.3d at 493 (quoting *Alexander,* 13 F.3d at 949) (alteration added by *Coyne* court). A plaintiff's motive is "irrelevant" to the fraudulent-joinder inquiry. *Jerome-Duncan*, 176 F.3d at 907. The Court, in assessing the motion, may consider summary judgment–type evidence but solely "for the limited purpose of determining whether there are 'undisputed facts that negate [plaintiff's] claim.'" *Casias*, 694 F.3d at 433 (quoting *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 955–56 (6th Cir. 2011)).

With these standards in mind, the Court finds that Defendants have not met their "heavy burden" of demonstrating fraudulent joinder given the uncertainty in Kentucky premises-liability law and the scant factual record before the Court (with ambiguities in both resolved in Plaintiff's

4

favor). Relying primarily on *Grubb*, Defendants argue that Higgins cannot be held liable for negligence under Kentucky law because "he lacked control over the alleged transient object or condition involved in Plaintiff's incident" and "he had no duty or vicarious duty to remedy or warn of an alleged condition . . . that he did not cause or create." [R. 14, p. 9] Defendants submitted an affidavit by Higgins that states that he "did not work" on the day of the alleged incident, "had no advance notice of any such object or condition," had "no control over the alleged *transient* object or condition," and "had no ability to warn Plaintiff" about the object or condition. [R. 1-1 (emphasis added)] Defendants argue that *Grubb* and other precedent preclude liability against employees who do not have sufficient control and do not directly cause the unsafe condition at issue. [R. 14, pp. 9–14]

Plaintiff Ashley alleges that Higgins, as store manager, "had a duty to supervise and maintain [the] store premises in a reasonably safe condition," and that he "failed to exercise ordinary care in inspecting, supervising, and maintaining the premises in a reasonably safe condition." [R. 7, p. 6; R. 1-3, ¶¶ 15–18] She further claims that Higgins had a duty to supervise the employee in charge of the store that day—and those actions could have caused Plaintiff's slip-and-fall even if the Higgins was not at the store himself. [R. 7, pp. 6, 8; R. 23, p. 10] Plaintiff argues that *Grubb* is not controlling for several reasons: *Grubb* was decided after a full factual record following a bench trial; its holding is fact-specific and based on the particular duties and degree of control of the store manager in that case; and given the lack of majority opinion in *Grubb,* Kentucky has adopted no "bright-line rule that a store manager cannot be held liable under a premises-liability theory." [R. 7, p. 7; R. 23, pp. 7–9] Plaintiff urges remand especially given that she "has not been afforded the opportunity to depose [Higgins]," or given

5

an opportunity to explore the "scope of [Higgins's] employment duties and level of autonomy over the premises." [R. 7, p. 7]

The Court must determine whether there is any colorable claim against Higgins, the non-diverse party, understanding the limited nature of federal jurisdiction and resolving all factual and legal uncertainties in favor of remand. *Eastman*, 438 F.3d at 549–50; *Coyne*, 183 F.3d at 493. First, it is undisputed that Higgins was the store manager. [R. 1-1] Further, although Wal-Mart claims that a "transient" object or condition caused Plaintiff's alleged fall, [R. 1-1, ¶ 3], Plaintiff makes no such allegation and points out that "[w]e do not even know how long the condition was present on the floor." [R. 7, p. 8] There are few details before the Court concerning the object or condition.

Plaintiff's negligence claim necessitates an inquiry into the scope and source of Higgins's duty to Plaintiff as well as his control and authority over the premises. But here the record is likewise devoid of facts critical for potential liability assessment. The Complaint alleges Higgins had "a duty to exercise ordinary care to supervise and/or maintain the store premises in a reasonably safe condition," and that he "failed to exercise said ordinary care when he did not properly inspect, supervise and/or maintain said store premises and allowed an unsafe puddle of liquid to remain in the floor." [R. 1-3, ¶¶ 16-17]. Otherwise, as Plaintiff points out, "[t]he record is completely devoid of Defendant Higgins's employment duties," and fails to indicate "what specific procedures or policies are undertaken to maintain the floors, let alone who institutes and carries out such procedures." [R. 23, p. 10] Higgins's affidavit is likewise silent on these issues. [R. 1-1] Plaintiff argues that even if it is ultimately proven that Higgins was not on duty the day Plaintiff was injured, "it does not logically follow, as a matter of law, that he could not

6

theoretically be held liable for some act or omission *prior* to that day." [R. 23, p. 10 (emphasis in original)]

The Kentucky Supreme Court recently addressed the duty question in the premises-liability context. *Grubb*, 523 S.W.3d at 422 (opinion of Hughes, J.). Defendants point to *Grubb* as conclusively precluding Plaintiff's negligence claim against Higgins, but *Grubb's* holding is far more nuanced than Defendants let on. The plaintiff in *Grubb* tripped and fell on cracked pavement at a Speedway station and sued Speedway and the station manager for negligence. 523 S.W.3d at 411–12.  The case moved back and forth between state and federal court for years. After a bench trial and award in favor of plaintiff, the Kentucky Supreme Court reversed in part (on the trial court's failure to address comparative negligence) but split 3–3 on the issue of the store manager's liability. *Id.* at 411–12, 430–31.[3] The court's 3–3 split left intact the Court of Appeals' holding on the issue, which found that the manager could not be held liable. *Smith v. Grubb*, No. 2011-CA-223-MR, 2014 Ky. App. Unpub. LEXIS 1045, at *20 (Ky. Ct. App. Sept. 26, 2014).

Given the winding procedural history of *Grubb* and the 3–3 split, the case is "a tough study" when it comes to premises-liability law. *Clark*, 2019 WL 5092941, at *3.  Justice Hughes's main opinion limited employees' liability in negligence to occasions where the employee is "in substantial control of the injury-causing object or condition." *Grubb*, 523 S.W.3d at 427 (opinion of Hughes, J.). Because the Speedway manager (a non-owner) did not have direct authority to repair the pavement, with only a circumscribed duty to maintain and inspect it, this was "nowhere near" the control needed to impose liability. *Id.* Justice Venters's separate opinion, however, addressed the duty question based on traditional negligence

---

[3] Justice VanMeter recused, which left six Justices deciding the case. *Grubb*, 523 S.W. 3d at 431.

7

notions—the manager's duty/role, assessment of foreseeable harm, knowledge, and "the consequences of their own negligent acts or omissions." *Id.* at 432 (opinion of Venters, J.). As the Venters group saw it, the manager had a duty to warn of and/or arrange a repair for the hole in the parking lot, and so in failing to meet that duty, she could be liable for the plaintiff's injury. *Id.* at 433.

*Grubb* makes determining a clear standard/rule virtually impossible, given that the Justices were evenly split. *See Clark*, 2019 WL 5092941, at *4 (noting that "[t]he landscape in Kentucky on manager liability is only as clear as a 3–3 split" and that the standard for employee managers is "far from certain"). Even before *Grubb*, the case law on this issue was "scant." *Pinion*, 2015 WL 12989971, at *2 (quoting *Smith*, 2014 Ky. App. Unpub. LEXIS 1045, at *15). By resolving that ambiguity in the law in favor of Plaintiff—that is, applying Justice Venters's vision of employee tort liability—a manager like Higgins may be held liable for unsafe premises, so long as the unsafe condition of the premises stems from a negligent act or omission of the manager. *Grubb*, 523 S.W.3d at 430 (opinion of Venters, J.).

But even under the Justice Hughes standard, it is *conceivable* that Higgins had enough control "to remedy" the defect, and substantial control over the injury-causing object or condition. *Id.* at 425, 427. Remember, Justice Hughes in *Grubb* described Kentucky premises-liability law as evaluating "an agent's employment omission . . . on a case-by-case basis." *Id.* at 427. That is, even under the more rigorous standard, the facts matter. The Hughes standard also left open potential liability for an alleged activity causing harm—that is, when an employee's activity "bring[s] about an unreasonably dangerous condition and cause[s] injury to a third person as a result." *Id.* at 426. Given the split between the Justices in *Grubb*, the obvious factual

8

drivers under either standard, and this undeveloped record, the Court can hardly say that Plaintiff has no colorable claim against Higgins.

It is undisputed that Higgins was the manager of the Wal-Mart store during the time period of the incident, [Complaint, ¶¶ 1–3; R. 1-1], and that the incident happened within the Wal-Mart store. [R. 5-1] The object or condition involved a liquid on the floor (and/or berries). But the record is devoid of any additional facts concerning how or when the substance got on the floor. Was the substance transient or the result of a known, recurring problem? It is possible that the substance resulted from a recent, accidental spill by another customer (which would likely preclude liability against Higgins, who was apparently off work that day). But it is also possible that the substance was the result of something more systemic, such as a known leak in the ceiling tile or a cooler located nearby. Whether Higgins as the store manager had a duty to remedy or warn and whether he had knowledge or control over such things sufficient to impose liability is unclear. The record fails to establish with any particularity the scope of Higgins's precise duties or authority as store manager. It is possible that Higgins had control sufficient to remedy the leaking cooler (by simply moving it) or the ceiling tile (by replacing it), or at least take measures to warn of any hazard that might arise (or instruct his employees to do so). It is at least conceivable that such things were within the store manager's control (and scope of duties) even under the Justice Hughes test.

Under the Venters approach, Higgins could certainly be held liable if he knew about a risk and failed to take remedial action or warn of its dangers. For instance, if Higgins knew about a leaky ceiling tile or nearby cooler (and the attendant risks) and took no remedial action or effort to warn, negligence might stick (even if he didn't know that water had pooled in the Wal-Mart aisle on the particular day that Plaintiff fell). Higgins may have contributed to this

substance being on the floor by setting inadequate policies for store upkeep or failing to adequately supervise other employees in their responsibilities to maintain the store. [R. 23, p. 10]

It is even possible Higgins may have caused this dangerous condition even more directly by, for example, failing to ensure the substance was cleaned up when he was on duty (if the substance had been on the floor for a while). [R. 7, p. 8] If he had a hand in creating the alleged dangerous condition, he could be found liable even under the more restrictive standard from Justice Hughes.

The Court understands that Higgins was apparently off duty the day Plaintiff fell, but this does not automatically absolve Higgins of liability, especially considering the undeveloped (and unchallenged) record on critical facts—the scope of his duties, his control and authority over the premises, the source of the substance (transient or from a known, systemic problem), Higgins's knowledge of a systemic problem or condition (even if he was unaware of the substance on this particular day), and his efforts to warn of any known risk. And Higgins's affidavit, standing alone, does not demonstrate that Plaintiff lacks a colorable claim against him. There are precious few facts in the record on the critical questions going to his potential liability. [R. 5-3, ¶ 2]

The Court's role in assessing claims on a fraudulent-joinder standard is not to adjudicate the dispute; rather, it is to resolve all factual and legal disputes in favor of the plaintiff and decide whether a claim against the defendant has a "glimmer of hope." Defendants fail to identify any controlling law (and the Court has found none) holding that an employee must be on duty at the time of a negligent incident to be liable.[4] Higgins's absence on the day of the incident makes the possibility of ultimate liability even less likely, but not an impossibility. If further fact

---

[4] In fact, *Manning v. Wal-Mart Stores E., Inc.*, 304 F. Supp. 2d 1146, 1150 (E.D. Mo. 2004), analyzing Missouri law, found that managing employees may be liable for negligence for actions committed when they are off duty.

development demonstrates Higgins had direct involvement in the injury-causing condition, knowledge of it (or the condition causing it), or other control sufficient to remedy the problem or warn of it, Plaintiff could state a colorable claim under Kentucky law. In the absence of clear authority otherwise and given the unsettled status of Kentucky premises-liability law, Plaintiff's negligence claim is colorable when viewing the facts and law in her favor under either Justice Hughes's or Justice Venters's standard.

This holding squares with similar cases in this district addressing premises liability for employees. *Mitchell v. Dow Chem. Co.*, No. CIV. 11-117-ART, 2011 WL 2938156, at *2 (E.D. Ky. July 19, 2011) ("[C]ourts have also routinely rejected fraudulent joinder arguments in an analogous situation where a plaintiff is injured on a store's premises (in a slip-and-fall, say) and sues both the national chain and the non-diverse store manager."). This Court recently considered a claim against a Lowe's store manager by a plaintiff who tripped over a display outside the store. *Clark*, 2019 WL 5092941, at *1. Citing *Grubb*, the store manager in *Clark* argued (like Higgins) that she could not be held liable because she did not control the specifics of the display and did not have sufficient control over the store for premises-liability purposes. [*Id.* at *2] Plaintiff's complaint generally alleged that the store manager had certain duties including "store maintenance, supervision and training of employees" and that "discovery may reveal that [the manager] had direct involvement" in the display or "had knowledge of the dangerous condition" it created. *Id.* Based on her affidavit, the store manager disclaimed "sufficient control" over the store display and the store itself to allow premises liability against her. *Id.* Nevertheless, the Court found plaintiff's factual allegations and legal theory were sufficient to clear the low bar of the fraudulent-joinder standard. *Id.* at *2, *5. After dissecting the uncertainty in Kentucky law even after *Grubb* and noting the sparse factual record before it, the *Clark* court

11

remanded the case, finding "it is possible—debatable and a challenge, but possible—for [the store manager] to be individually liable in this case." *Id.*, p. 5.

Similarly, in *Pinion*, plaintiff slipped and fell in a Wal-Mart (apparently from a leak) and sued the store manager. 2015 WL 12989971, at *1. Even though the manager's affidavit disclaimed knowledge or responsibility for the condition that caused the leak, the *Pinion* court found that the manager was not fraudulently joined, since there was no clear rule against manager liability and the manager could have otherwise been responsible for mitigating the danger from the leak. *Id.* at *2. The court further reasoned: "[The manager's] affidavit leaves unanswered questions about the scope of his duties to Wal-Mart invitees . . . . And, viewing the facts in [plaintiff's] favor, it is surely reasonable to believe that managers have a duty to keep their store clean and free from hazards." *Id.* at *2. Importantly, *Pinion* was decided before the Kentucky Supreme Court's decision in *Grubb*, but it analyzed the earlier Court of Appeals ruling in that case, which adopted the more restrictive approach to premises liability for store managers. *Smith*, 2014 Ky. App. Unpub. LEXIS 1045, at *20. That is, *Pinion* found the Plaintiff's allegations survived fraudulent joinder even under the standard ultimately adopted by Justice Hughes and two colleagues: "[E]ven a person who possesses but does not own premises—like [the store manager]—can owe invitees a duty." *Pinion*, 2015 WL 12989971, at *2; *see also Clark*, 2019 WL 5092941, at *5 (finding plaintiff passed the fraudulent-joinder standard even under the logic of the Justice Hughes opinion in *Grubb*).

Despite Defendants' claims of "controlling authority" on their side, the cases they cite are inapposite. *Casias v. Wal-Mart Stores, Inc.*, 764 F. Supp. 2d 914, 918 (W.D. Mich. 2011), *aff'd*, 695 F.3d 428 (6th Cir. 2012) concerned Michigan law, not Kentucky law. *Bishop v. Wal-Mart Stores, Inc.*, 24 F. App'x 236, 237 (6th Cir. 2001) involved the Kentucky Workers Compensation

12

Act. *Simmerman v. Ace Bayou Corp.*, No. CIV.A. 5: 14-382-DCR, 2014 WL 6633129, at *3 (E.D. Ky. Nov. 21, 2014) concerns product liability law, not negligence under a premises-liability theory.

The facts of *Grubb* are similar to this case (slip-and-fall premises-liability action), but it is also not controlling. *Grubb* involved an accident that occurred outside the store (in the parking lot), and it was decided after a fully developed record following a bench trial. 523 S.W.3d at 411, 413. Moreover, as explained in detail, *Grubb* had no controlling opinion, as the Justices ultimately split 3–3. *Id.* at 430–31. *Beasley v. Kaelin*, No. 2017-CA-924-MR, 2019 WL 4565545 (Ky. Ct. App. Sept. 20, 2019), *review denied* (Apr. 22, 2020), which considered *Grubb* and declined to hold circuit clerks liable for a slip-and-fall on the premises, involved distinctly different facts, where "[u]nlike the manager in *Grubb*, the Clerks were not responsible for maintaining the premises or providing janitorial services." *Beasley*, 2019 WL 4565545, at *3.

*Sabiston's Administrator v. Otis Elevator Co.*, 64 S.W.2d 588, 589 (Ky. 1933), an 83-year-old case involving a property manager's duties to repair an elevator defect on his property, is interesting but ultimately not dispositive. In *Grubb*, Justice Hughes noted that *Sabiston's* was "what appears to be the only Kentucky premises case raising these agency questions." *Grubb*, 523 S.W.3d at 425. But *Sabiston's* clearly cannot be a better guide to Kentucky employee negligence law than *Grubb*. And *Grubb* resulted in a 3–3 split, with three Justices declining to adopt the "substantial control" test. *Grubb*, 523 S.W.3d at 432.

*Gayheart v. Wal-Mart, Inc.*, No. 7:18-CV-00096-GFVT, 2018 WL 6028702, at *2 (E.D. Ky. Nov. 15, 2018) also falls short. That case concerned a Wal-Mart non-managerial employee sued by a slip-and-fall plaintiff. *Id.* Using the "sufficient control" test outlined by Justice Hughes's opinion in *Grubb*, the *Gayheart* court dismissed the employee based on fraudulent

13

joinder for not having sufficient control over the leaky ceiling at issue and because the employee, as "merely an employee and *not even a manager*," had no duty to warn of an allegedly unsafe condition that he had not created. *Id.* at *3 (emphasis added). *Gayheart* is distinguishable on two grounds. First, unlike Higgins, the employee in *Gayheart* was not a manager, so there could be no allegation, as Plaintiff claims here, that the employee had duties to maintain, supervise, and inspect the premises. Second, *Gayheart* did not grapple with the uncertainty posed by the 3–3 *Grubb* split. *See Clark*, 2019 WL 5092941, at *5 ("*Gayheart* treated *Grubb* as definitive on the manager-duty measure; *Gayheart*, however, did not wrestle with the 3–3 nature of that key section of *Grubb*, so the Court discounts *Gayheart*'s force."). There is considerably more ambiguity in Kentucky premises-liability law related to store managers than *Gayheart* or Defendants acknowledge.

Because Defendants point to no controlling cases prohibiting liability for managers like Higgins, and given the ambiguities left in Kentucky tort law after *Grubb* and the undeveloped record, Plaintiff has a "glimmer of hope," however dim, for her claim against Higgins. Accordingly, Defendant Higgins was not fraudulently joined, and the Court will grant Plaintiff's Motion to Remand for lack of subject-matter jurisdiction.

### III.    Motion for Attorney Fees

Plaintiff moved for attorney's fees under 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  Plaintiff believes attorney's fees are appropriate because (1) Defense counsel committed assorted discovery abuses by "negligently investigat[ing] the case" and "[p]erhaps even intentionally mishandl[ing it]," and (2) "[d]efense knowingly removed this case based on unfounded law" by using both the fraudulent-joinder

14

standard and the Rule 12(b)(6) standard for its Notice of Removal and Motion to Dismiss, and by removing the case without a clear rule precluding employee tort-premises liability. [R. 9, pp. 1–2; R. 24, p. 4]

The Court disagrees. Fee awards are only appropriate when "the removing party lacked an objectively reasonable basis for seeking removal" unless "unusual circumstances warrant a departure from the rule in a given case." *Powers v. Cottrell, Inc.*, 728 F.3d 509, 515 (6th Cir. 2013) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)). Though remand is appropriate, Defendants' removal was reasonable. Defendants relied on favorable decisions involving factually similar cases in *Gayheart*, *Grubb*, and *Beasley*. These decisions gave Defendants a reasonable basis on which to remove the case, even if the basis on which the case was removed was ultimately deficient. *See Murriel-Don Coal*, 790 F. Supp. 2d at 600. Likewise, Plaintiff does not present any evidence of "unusual circumstances" that would warrant a fee award.

The alleged discovery abuses include Defendants dragging their feet in discovery, mishandling an affidavit, and mishandling video evidence. [R. 9, p. 1; R. 24 pp. 4–5] Defendants dispute these allegations. [R. 16] If true, these allegations might be proper fodder for an appropriate motion on remand, but Plaintiff makes no argument as to how these alleged abuses occurred "as a result of [Defendants'] removal," such that a fee award under § 1447(c) is appropriate. 28 U.S.C. § 1447(c). Regardless, on this record the Court finds no "unusual circumstances" that would support an award of attorney's fees under the facts of this case.

The Plaintiff having not met the standard for a fee award under § 1447(c), her Motion for Attorney Fees will be denied.

**IV. Motion to Dismiss and Motion to Amend**

Having determined that the Court lacks subject-matter jurisdiction over this case, the Court lacks authority to decide the other motions on review (Defendant Higgins's Motion to Dismiss and Plaintiff's Motion to Amend). *See Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 531 (6th Cir. 1999) ("[A] remand to state court divests a district court of jurisdiction such that it may not take any further action on the case."); *see also Eastman*, 438 F.3d at 549–50 (explaining that if the Court lacks jurisdiction, any order entered by the Court would be void); *Manning* , 304 F. Supp. 2d at 1150 (deferring a motion to dismiss to state court upon deciding to remand the case).

V.  CONCLUSION

For the reasons outlined above, Plaintiff's Motion to Remand will be granted, Plaintiff's Motion for Attorney Fees will be denied, and the other pending motions will be denied as moot.

Accordingly, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. Plaintiff's **Motion to Remand** [**R. 7**] is **GRANTED**.

2. Plaintiff's **Motion for Attorney Fees** [**R. 9**] is **DENIED**.

3. Plaintiff's Motion for Permissive Joinder and Leave to Amend Complaint [**R. 8**] is **DENIED as moot**.

4. Defendant Higgins's **Motion to Dismiss** [**R. 5**] is **DENIED as moot**.

5. This case **WILL BE REMANDED** back to Perry Circuit Court.

6. This action is **STRICKEN** from the Court's docket.

This the 23rd day of December 2020.



CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY